UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHAMBALA J.E. HOLLIS, | ) | CASE No. 4:08CV2491 |
| Plaintiff, | ) ) ) | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | ) ) | |
| PLY-TRIM, INC., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

The instant matter is before the Court on Defendant Ply-Trim's ("Defendant") Motion for Summary Judgment (ECF Dkt. #70) and Plaintiff Chambala J.E. Hollis' ("Plaintiff") Motion to Dismiss Defendants [sic] Motion for Summary Judgment with Prejudice (ECF Dkt. # 74). For the following reasons, the Court GRANTS Defendant's motion and DENIES Plaintiff's motion:

**I.  PERTINENT FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filled out an application with Snelling Personnel Services ("Snelling"), who placed him at Ply-Trim a week later on June 5, 2007. Chambala Hollis Deposition (ECF Dkt. #70, Ex. A) ("Hollis Dep.") at 48-49; *see also* ECF Dkt. #70 at 1. Plaintiff began work on June 8, 2007. Hollis Dep. at 55. His first duty was to stack wood and bundle it as it came out of a saw machine. *Id.* at 56. During the next few weeks, Plaintiff was involved in an altercation with a co-worker, he damaged a garage door, dropped a bundle of wood (apparently from a forklift), and was accused of insubordination. *Id.* at pg. 103-104; pg. 105, lines 13-20, pg. 106, lines 4-6; pg. 109, lines 6 – 19; ECF Dkt. #74, Ex. 3. Plaintiff was ultimately asked to leave Ply-Trim on July 6, 2007. Hollis Dep. at 113-114.

On October 21, 2008, Plaintiff filed a pro se complaint alleging the following: a violation of Title VII of the Civil Rights Act of 1964; wrongful termination; breach of contract; breach of duty of care; subordinate bias "rubber stamp theory;" defamation of libel and slander; and intentional

infliction of emotional distress. ECF Dkt. #1. On April 13, 2009, Defendant filed an answer. ECF Dkt. #10.

On October 5, 2009, Plaintiff filed an amended complaint. ECF Dkt. #39. In the amended complaint, Plaintiff asserts various contractual claims (*id.* at 3-9); discrimination claims (*id.* at 9-15); "breach of duty of care" claims against Robin D. Kempf, Kevin J. Herner, and Harry O. Hoffman for failing to protect Plaintiff from unlawful practices (*id.* at 15-16); and state law claims, including interference with prospective economic advantages and or business relations, defamation, slander, willful misconduct by supervisors, mental anguish, and intentional infliction of emotional distress (*id.* at 17-20).

On December 1, 2009, Defendant filed the instant motion for summary judgment. ECF Dkt. #70. On December 16, 2009, Plaintiff filed the instant motion to dismiss Defendant's motion for summary judgment. ECF Dkt. #74.

## II.    STANDARD OF REVIEW

The function of summary judgment is to dispose of claims without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact. *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6th Cir. 1982). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C).

The party moving for summary judgment has the burden of showing there exists no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This burden can be discharged by showing that the nonmoving party has failed to establish an essential element of his case, for which he bears the ultimate burden of proof at trial. *See e.g., Catrett v. Celotex Corp.*, 477 U.S. 317, 323 (1986); *Morales v. Am. Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995). The evidence and all the inferences that can reasonably be drawn therefrom must be read in the light most favorable to the nonmoving party. *Id.*

If the moving party meets his burden, the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* Fed. R. Civ. P. 56(e). To refute such a showing, the

nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

In ruling on a motion for summary judgment, the court is not obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Therefore, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the record specifically called to its attention by the parties. *Staats v. United States*, No. C-3-99-174, 2001 WL 1135056, *3 (S.D. Ohio Mar. 12, 2001), unreported; *Interroyal Corp. v. Sponseller*, 889 F .2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990).

### III. LAW AND ANALYSIS

Defendant contends that it is entitled summary judgment because Plaintiff was not an employee for Title VII purposes and, in the alternative, Plaintiff has failed to establish that a comparable unprotected person was retained or not disciplined for conduct similar to that which resulted in Plaintiff's discharge. ECF Dkt. #70 at 5-6. Defendant's motion is "based solely on the testimony of [Plaintiff]." *Id*. at 5  Defendant's motion does not address Plaintiff's"breach of duty of care" (to the extent that the claim implicates Ms. Kempf, Mr. Herner, and Mr. Hoffman in their official capacities) or state law claims.

#### A. TITLE VII CLAIM

The Court will first review the sufficiency of the amended complaint and the evidence presented pertaining to Plaintiff's Title VII claims. Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees "because of ... race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a). In order to establish a race discrimination claim under Title VII, a plaintiff must either "present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). The two principal means of proving discrimination under Title VII are disparate treatment and disparate impact. *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

In the case at bar, Plaintiff offers no direct evidence of discrimination. As a result, Plaintiff's claim of race discrimination must be evaluated using the burden-shifting approach established in *McDonnell-Douglas*, 411 U.S. 792, as refined by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002). The burden of establishing a prima facie case "is not onerous, but one easily met." *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000).

If Plaintiff meets this burden, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Vaughn,* 291 F.3d at 906, *Abbott,* 348 F.3d at 542. A defendant need not prove a nondiscriminatory reason for terminating an employee, but rather must only articulate a valid rationale. *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 514 (1993)).

Once an employer offers a legitimate, nondiscriminatory reason for taking an adverse employment action, the burden of production shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination. *Abbott*, 348 F.3d at 542. A plaintiff can prove pretext by establishing that the defendant's stated reason (1) has no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to warrant the challenged conduct. *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1020-1021 (6th Cir. 2000); *see also Abbott*, 348 F.3d at 542. Further, the United States Supreme Court has found that a plaintiff may demonstrate pretext though the general policy and practice of the employer with respect to minority employment, and that statistics may be helpful to a determination of whether the challenged conduct conformed to a general pattern of discrimination against blacks. *McDonnell-Douglas,* 411 U.S. at 805. If a plaintiff can show that the defendant's proffered, nondiscriminatory reason is pretextual, the trier of fact may infer discrimination. *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). Nevertheless, the ultimate burden of proof to show discrimination remains on the plaintiff at all times. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993).

As a threshold matter, a plaintiff must establish that the defendant was his employer for civil liability to attach under Title VII. *Baetzel v. Home Instead Senior Care,* 370 F.Supp.2d 631, 639

(N.D.Ohio,2005). Further, in order to prove a *prima facie* case of race discrimination based on disparate treatment, the plaintiff must establish that (1) he is a member of a protected class, (2) he was subjected to an adverse employment action or was discharged, (3) he was qualified for the position, and (4) he was replaced by a person outside of the protected class if asserting race, color or gender discrimination. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002). The fourth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably. *Mitchell*, 964 F.2d at 582-83; *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir.1995); *Clayton*, 281 F.3d at 610.

### i. Whether Plaintiff was Defendant's "employee" for Title VII purposes

In the case at bar, Defendant first asserts that Plaintiff's claim lacks merit because he was not an "employee" of Defendant's company for Title VII purposes. ECF Dkt. #70 at 7. Two possibilities exist. Either Plaintiff was an employee of Snelling alone, or he was an employee of both Snelling and Ply-Trim. In determining which situation exists, the Court must consider two tests. First, the Court will consider an agency law-based test articulated by the United States Supreme Court in *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323-24 (1992), which is typically used in single employer situations. The Court will consider this test because Defendant asserts that Plaintiff is not considered an employee under the *Darden* test.

However, the Court is ultimately persuaded by the holding and the reasoning of *Brown v. City of North Chicago*, 2006 WL 1840802 at *7 (N.D.Ill. June 28, 2006), unreported, citing *Piano v. Ameritech/SBC*, No. 02 C 3237, 2003 WL 260337, at *5 (N.D.Ill. Feb.5, 2003). The Northern District of Illinois noted in *Brown* and *Piano* "that the joint employer theory should apply in cases in which an individual is employed by a temporary employment agency, but suffers discrimination by the employer to which he or she is assigned, where that employer exerts a significant amount of control over the individual." *Id*. Under the joint employer test, two entities may both be a worker's employer if they share or co-determine those matters governing the essential terms and conditions of employment. *See, Carrier Corp. v. NLRB*, 768 F.2d 778 (6th Cir.1985); *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1330 (10th Cir.2002). Accordingly, the Court will ultimately

-5-

look to a joint employer test to determine if both Snelling and, more importantly, Ply-Trim exerted control over the essential terms and conditions of Plaintiff's employment. *See id.*

Defendant's analysis first points to *Darden,* where, in the context of ERISA, the United States Supreme Court has adopted a common law test for determining who qualifies as an "employee." That test considers a non-exhaustive list of factors:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden,* 503 U.S. at 323-24. The Sixth Circuit has applied this rule of law in determining if a hired party is an independent contractor or an employee for Title VII purposes. *Weary v. Cochran*, 377 F.3d 522, 524-25 (6th Cir. 2004); *Shah v. Deaconess Hosp.*, 355 F.3d 496, 498 (6th Cir.2004).

Defendant contends that under this test, Plaintiff was not its employee; rather, he was an employee of Snelling. ECF Dkt. #70 at 8. The Court is not aware of any authority standing for the proposition that the *Darden* test can be used to prevent a finding that one entity employs an individual. In other words, the Court does not interpret *Darden* to mean that one and only one entity can be considered Plaintiff's employer. Apparently, Defendant seeks this construction, but offers no legal support for that conclusion. Regardless, the Court ultimately determines that Defendant is Plaintiff's employer under consideration of the factors articulated in *Darden*.

Defendant points to Plaintiff's deposition testimony indicating that he filled out an employment application with Snelling. ECF Dkt. #70 at 9. Defendant also notes that Snelling selected Plaintiff's work assignment at Ply-Trim. *Id*. at 9. Defendant notes that Plaintiff did not fill out an application at Ply-Trim, he did not go through orientation, he did not receive an employee handbook, and he did not receive training. *Id*. at 10. Defendant goes on to contend that it did not control the manner and means by which Plaintiff completed his work, it did not supervise or monitor his work, and Plaintiff's position did not require any specialized skill or tools. *Id*. at 12-14. Lastly,

Defendant contends that Plaintiff returned to Snelling for reassignment following his alleged termination from Ply-Trim, which indicates that Plaintiff was an employee of Snelling. *Id*. at 14.

The Court first notes that Defendant has put undue emphasis on the fact that Plaintiff was hired through a temporary employment placement agency. The Court is persuaded by the *Brown* court's reasoning. In holding that the joint employer test was applicable, the court went on to conclude: "To hold otherwise would be to permit an employer that would otherwise be subject to the ADA to avoid liability for its discriminatory conduct while maintaining control over the employees to which it was assigned merely by virtue of their status as temporary employees." *Brown*, 2006 WL 1840802 at *7. That observation applies with equal weight here. A worker cannot be excluded from the protections provided by Title VII merely because he was hired through a temporary employment agency.[1] Defendant does not explicitly state that Plaintiff is exempted from Title VII protections solely by virtue of his placement through Snelling. However, under Defendant's analysis, virtually any employee placed through a temporary agency would fall outside of the protections provided by Title VII.

Defendant relies on generalized assertions that Plaintiff completed a job application with Snelling, that Snelling placed him with Ply-Trim, and that Snelling furnished his paychecks. These situations will undoubtedly arise in most temporary agency placement situations. Defendant goes on to contend that it had no supervisory control over Plaintiff, but that conclusion ignores the facts of the case and Defendant's own assertions. The facts of the case at bar demonstrate that Defendant controlled the manner and means by which Plaintiff accomplished his duties, Defendant gave Plaintiff new work assignments, Defendant sought to have Plaintiff's employment terminated by Snelling, all of Plaintiff's work was performed at Defendant's site, Plaintiff operated specialized equipment (a forklift) on Defendant's site,[2] Defendant is a business, and the work Plaintiff

---

[1] Although, this Court does not interpret *Brown* to stand for the legal proposition that every temporary worker hired through an employment agency is considered an employee of the company receiving the benefits of the labor. Rather, the Court must consider the facts on a case-by-case basis.

[2] Hollis Dep. at pg. 60, line 23.

performed was routine to Defendant's business operation. These factors outweigh the generalized considerations of temporary agency placement. And Defendant cites no authority for the proposition that Plaintiff is not an "employee" for Title VII purposes by virtue of his placement through Snelling.  The Court has reviewed the deposition testimony upon which Defendant relies and disagrees with Defendant's interpretation of the facts. Defendant asserts that it did not supervise Plaintiff or control the manner or means by which he performed his job duties. ECF Dkt. #70 at 12-14. Defendant cites the following deposition language in support:

> Q: But there wasn't a supervisor standing over you 24/7 telling you what to do?
>
> A: No. Kevin, he didn't – he didn't stand over us. **He popped in and out periodically. Or he might stand at the end of a hallway and monitor what's going on out on the floor**, but he didn't just stand over you eight, nine, ten hours a day because he had his own work to do.

ECF Dkt. #70 at 13 quoting Dep. of Chambala Hollis ("Hollis Dep."), Pg. 55, line 20 to pg. 56, line 22. The Court first notes that Plaintiff did not work 24 hours a day, 7 days a week, so he certainly would not have a supervisor overseeing him for that period. Even so, the Court does not find it dispositive that Plaintiff worked without supervision for parts of the day. However, it is illuminating that the portion of deposition testimony upon which Defendant relies in asserting that it did not supervise Plaintiff explicitly states that Kevin Herner "popped in and out periodically" and would "monitor what's going on out on the floor" – that is supervision.

Further, contrary to its position in the instant motion, Defendant has previously acknowledged that Plaintiff was subject to Kevin Herner's supervision and control. Defendant sent a letter to the Ohio Civil Rights Commission, where it indicated that it had direct supervision over Plaintiff "During that 30 day period, Mr. Hollis has [sic] numerous run-ins with other employees, **was insubordinate to *his plant supervisor*, Kevin Herner,** and damaged equipment and materials." ECF Dkt. #74 , Ex. 3. (internal citations omitted) (emphasis added). Defendant itself referred to Kevin Herner as *Plaintiff's* plant supervisor, not *the* plant supervisor. Clearly Defendant viewed Plaintiff at least as a contract employee, but an employee nonetheless. That same letter states that "Mr. Hollis employment with the Ply-Trim Company was as a contract employee whose service was to end when our temporary increase in orders where [sic] met." *Id.* The letter concludes that "Mr.

-8-

Hollis was relieved of his duties for . . . insubordination. . ." *Id.* While Defendant contended on October 1, 2007 that it had cause to terminate Plaintiff for insubordination, it now contends that it never supervised him and that he had unfettered discretion to perform his duties. The Court must look to the evidence (Defendant's letter and Plaintiff's deposition testimony) and determine that there is a basis for concluding that he was an employee for Title VII purposes.

Defendant exerted control over Plaintiff's job duties by reassigning him from stacking wood to sweeping the floor. And, while Defendant asserts in its own brief that it did not supervise Plaintiff or control the manner or means by which he performed his duties, Defendant's brief later asserts a contrary position, contending that it had cause for terminating Plaintiff for failing to properly sweep the floor, among other things:

> The last and final incident occurred on July 6, 2007 when Ply-Trim plant manager, Kevin Herner, asked Hollis to sweep the floor while Ply-Trim employees attempted to make repairs to a machine. Hollis believed his area was fully swept. Thus, he refused to do as asked by Kevin Herner. On said date, when Hollis refused to sweep the floor, Ply-Trim contacted Snelling and asked that Hollis be reassigned and/or terminate his alleged at–will employment. Thus, his alleged at-will employment was terminated immediately upon the fourth inappropriate incident in 28 days of alleged employment.

ECF Dkt. #70 at 18. On Defendant's own admission, it not only supervised Plaintiff, but it also instructed him on how to perform his job and exerted control over his employment status by asking Snelling to reassign Plaintiff "and/or **terminate** his alleged at-will employment." *Id.* (emphasis added). Admittedly, Defendant advanced its "termination for cause" argument as an alternative to its contention that Plaintiff was not its employee. *See* ECF Dkt. #70 at 18. Regardless, it remains that Defendant contends that it had cause for terminating Plaintiff because he did not follow instructions of *his supervisor*, Kevin Herner. Even though Defendant adopts alternative legal positions, it ultimately admits the underlying fact that it supervised Plaintiff in his day-to-day job functions.

Defendant contends that Snelling controlled Plaintiff's job assignments by placing him with Ply-Trim. While that assertion may be true, it is an overly broad consideration that would hold true in most temporary employment agency situations. Allowing that fact to prevent a finding of employment would establish precedent permitting a company to employ its workforce through a

-9-

temporary agency to avoid Title VII liability. Such a result would undermine the purpose of Title VII. *See Brown,* 2006 WL 1840802 at *7. Instead, the Court will consider the more specific consideration of whether Defendant controlled Plaintiff's day-to-day duties. Here, Defendant assigned Plaintiff to stack wood, and then it reassigned him to sweep floors. Therefore, this factor does weigh in favor of finding that Plaintiff was an employee.

The Court further notes that Defendant is in business, Plaintiff was performing work that appears to have been routine to Defendant's business operation, and Defendant stood to directly benefit from Plaintiff's productivity.

In considering all of the above, the Court finds that Plaintiff was an employee for Title VII purposes. The few aspects of control and influence that Snelling exerted over Plaintiff are more appropriate considerations in determining if Snelling was a joint employer. They do not foreclose a conclusion that Defendant was an employer. However, inquiry under the joint employer test is still necessary to determine whether Defendant is considered an employer for Title VII purposes.

The Sixth Circuit has articulated that joint employer test as follows:

> The basis of the [joint employer] finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. Thus, the "joint employer" concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment.

*Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, n. 4 (6th Cir. 1997) citing *NLRB v. Browning-Ferris Industries of Pennsylvania, Inc.*, 691 F.2d 1117, 1124 (3d Cir.1982). Although the Sixth Circuit cited this standard as the applicable standard for determining joint employment in an NLRA case, Defendant agrees that this standard applies to the instant case (ECF Dkt. #70 at 8) and another Judge in this Court has indicated that it would be appropriate to use this standard in a Title VII case. *See Baetzel*, 370 F.Supp.2d at n. 4.

Based on the Court's consideration of the *Darden* test, it is clear that Defendant did exert control over the matters governing the essential terms and conditions governing Plaintiff's employment. Defendant instructed Plaintiff on what tasks to complete. Defendant supervised Plaintiff. And Defendant ultimately sought to have Plaintiff reassigned and/or terminated due to

insubordination. By exercising direct control over Plaintiff during his term of employment and by ultimately and successfully seeking his termination, Defendant participated significantly in governing the terms of Plaintiff's employment. Defendant could therefore be held liable as a joint employer.

### ii. Whether a similarly situated non-protected employee was treated more favorably

Next, Defendant contends that Plaintiff fails to establish a prima facie case because he presents no evidence that a similarly situated non-protected employee was treated more favorably. ECF Dkt. #70 at 17-21. Defendant notes that Plaintiff worked at Ply-Trim for only 28 days, and during that period he was involved in multiple incidents. *Id*. at 18. First, he was involved in a verbal altercation with a full-time employee, Mike Saunders. *Id*. at 20 citing Hollis Dep., pg. 108, line 12-14, pg. 110, line 6-18. Defendant next contends that Plaintiff was involved in two incidents of property damage. Defendant cites:

> Q: Okay, Let's go on to Line 9, and it says, "The damage to the company property as dumping a unit of lumber into the ductwork on the Cornell Saw and running his truck into a garage door at the staining plant." Is that what that partial sentence says?
>
> A: Yes, ma'am.
>
> Q: Okay. Let's start with the first part.
>
> A: Yes, ma'am.
>
> Q: "The damage to the company property was dumping a unit of lumber into the ductwork on the Cornell machine." Did that happen?
>
> A: It didn't happen the way he said it did.
>
> Q: Did you - -
>
> A: I do admit, and like I admitted in my Complaint …. (Deposition of Chambala Hollis, pg. 109, lines 6 – 19).

ECF Dkt. #70 at 19. The Court first notes that Defendant cites the incorrect page number of the deposition. This testimony was in fact located at page 103. More importantly, Defendant has taken this testimony out of context. Although Plaintiff stated "like I admitted in my Complaint. . ." Plaintiff went on to state "It didn't smash the duct like Mr. Herner said it did, 'cause if it would have smashed it, that would mean that we wouldn't have been able to continue doing our work that day,

-11-

and the ductwork would have been messed up." Hollis Dep Pg. 104, lines 14-18. It is unclear why Defendant would take Plaintiff's statement out of context because it remains true that Plaintiff dropped a bundle from a forklift and he nearly injured an employee. *See* Hollis Dep. at pg. 103-104.

Defendant further notes that Plaintiff admits to damaging a garage door. ECF Dkt. #70 at 19 citing Hollis Dep. at pg. 105, lines 13-20, pg. 106, lines 4-6. Upon review of the pertinent deposition testimony, the Court agrees that Plaintiff has admitted to the incident.

Lastly, Defendant contends that Plaintiff was insubordinate for failing to sweep the floors. Defendant's October 1, 2007 letter establishes a factual basis for this contention. *See* ECF Dkt. #74, Ex. 3. Plaintiff argues that there was no need to sweep the floors. Hollis Dep. pg. 94-103.

Even assuming a genuine issue of material fact exists pertaining to the issue of Plaintiff's alleged insubordination for failing to sweep the floor, Plaintiff has still failed to establish that a similarly situated employee, *i.e.* an employee of approximately one month, had three infractions of a similar nature and degree to Plaintiff's infractions. Further, Plaintiff has failed to show that said employee was treated more favorably than he was.

In opposing Defendant's motion, Plaintiff contends that an African-American co-worker referred to him by a racial slur. ECF Dkt. #74 at 4. He further contends that he was fired for failing to sweep a floor that was already clean. *Id*. at 5. He appears to contend that this justification for his discharge was a pretext. *See id*. These arguments, however, miss the issue. They fail to address the point of whether a similarly situated individual of a non-protected class was treated more favorably. Plaintiff must first establish a prima facie case before the Court considers if the cause for his discharge was pretextual.

Further, Plaintiff relies solely on his own deposition testimony as evidentiary support for his claim of pretext. *See* ECF Dkt. #74 at 5 Citing Ex. 4(b)(c). Even if this evidence were probative of an element of a prima facie case, it would be inadequate to prevent the entry of summary judgment. *See Britenriker v. Mock*, 2009 WL 2392917, n. 1 (N.D.Ohio, July 31, 2009) ("The absence of additional evidence to support a party's position beyond his own self-serving testimony is insufficient to overcome a motion for summary judgment.")*; Brooks v. American Broadcasting Companies, Inc.,* 999 F.2d 167, 172 (6th Cir. 1993) ("As with a summary judgment analysis, the

district court was not required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."); *Comfort Trane Air Conditioning Co. v. Trane Co.*, 592 F.2d 1373, 1383 (5th Cir.1979) ("Unsupported, self-serving testimony is not substantial evidence sufficient to create a jury question.").

Plaintiff also contends that Mr. Saunders, an African-American employee, was retained following the altercation he and Plaintiff had. ECF Dkt. #74 at 7 citing Ex. 2,3. Further, Plaintiff contends that he was required to work with Mr. Saunders on a day-to-day basis or he would be terminated. *Id.* citing Ex. 4. Exhibit 4, upon which Plaintiff relies is not authenticated, and has no assurances of admissibility. "[E]vidence submitted in opposition to a motion for summary judgment must be admissible." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir.1997). Even so, Mr. Saunders is a member of a protected class.

Plaintiff next contends that he was required to attend a corporate strategy meeting on his day off, or he would be fired. ECF Dkt. #74 at 8. This assertion, even if true does not establish racial animus and it does not indicate, let alone offer evidence, that workers of a non-protected class were exempted from attending.

Plaintiff turns to an allegation that Mr. Herner had fired an African-American employee named "Jackson" because he had not learned to operate any machinery. ECF Dkt. #74 at 8. Plaintiff offers no evidentiary support for this claim. Even if he did, the connection to the circumstances surrounding Plaintiff's termination is tenuous at best.

Plaintiff contends that Defendant refused to train and/or retrain him in more technical jobs because Mr. Herner told him in the presence of Mr. Saunders that a "black guy cut his hand." ECF Dkt. #74 at 9. Again, Plaintiff offers no evidentiary support for his claim. Moreover, the Court notes that Plaintiff was hired on a temporary basis. Therefore, it might not have been efficient to train Plaintiff on more technical duties for a short term.

The Court reiterates that the issue at this stage in the analysis is whether a similarly situated member of a non-protected class was treated more favorably. Looking at the number of incidents to which Plaintiff has admitted involvement (damaging the garage door, dropping the bundle of wood, and a verbal altercation with a co-worker) in 28 days, Plaintiff must establish that a *similarly*

*situated* non-protected individual was treated more favorably. He has identified no such individual. Accordingly, Plaintiff has failed to establish a prima facie case of racial di`scrimination. His complaint is therefore dismissed with prejudice against all defendants to the extent that it is based on racial discrimination.

### B. STATE LAW CLAIMS

Although Defendant does not address Plaintiff's state law claims in its motion, the Court may address them sua sponte to the extent that Plaintiff had: notice that the Court would address the claims; notice that he was required to present all of his evidence; and a reasonable opportunity to respond to all issues. *DePiero v. City of Macedonia*, 180 F.3d 770 (6th Cir. 1999). Here, Plaintiff presented evidence and arguments in support of his state law claims in his motion to dismiss Defendant's summary judgment motion. *See* ECF Dkt. #74 at 13-20. Accordingly, the Court finds it appropriate to address the claims sua sponte.

The Court first notes that these claims are based on diversity jurisdiction. ECF Dkt. #39 at 2. However, the amended complaint does not allege the citizenship of each defendant. *See* ECF Dkt. #39. Federal Rule of Civil Procedure 8 provides in its pertinent part that a pleading that states a claim for relief must contain a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support. Fed. R. Civ. P. 8(a)(1). Title 28, Section 1332 of the United States Code provides in its pertinent part that:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between–
>
> (1) citizens of different States;

28 U.S.C. 1332(a)(1). As the Sixth Circuit noted:

> It is of course proper, and indeed mandatory for a court to inquire into its subject-matter jurisdiction. We note, for example, that there is some uncertainty as to whether the complaint and record are sufficient to demonstrate diversity of citizenship of the parties under 28 U.S.C. s 1332. The amended complaint fails to allege the principal place of business of Day and Night Manufacturing Corporation or the domiciles of the four individual defendants.

*Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, n. 1 (6th Cir. 1978). Here, the amended complaint fails to alleged the citizenship of any of the defendants. Moreover, Plaintiff has failed to perfect

service on the individual defendants at the address listed on the summon forms he has provided. At the time he filed the original complaint, Plaintiff resided in Missouri. ECF Dkt. #1. This Court considers Plaintiff's Missouri residence for jurisdictional purposes. *See Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1025-26 (7th Cir. 2006) ("federal jurisdiction is (with immaterial exceptions) determined as of the date the complaint is filed. . . Jurisdiction once acquired . . . is not divested by a subsequent change in the citizenship of the parties."). Although Plaintiff's allegations involve actions that occurred in Ohio, and it may be reasonable to infer that everyone at the time of the incident resided outside of Missouri, diversity of citizenship is determined at the time the action is filed. Therefore, the Court has no assurances that all defendants resided outside of Missouri at the time the instant suit was filed.

Lastly, it is noted, that Plaintiff has sought strict adherence to the scheduling orders in this case (*see* ECF Dkt. #50, 52), and the time for amending pleadings expired on October 2, 2009 (ECF Dkt. #21). Further, Plaintiff did not seek leave to amend his complaint to remedy and jurisdictional deficiencies during the time set forth in the Case Management Order. Accordingly, Plaintiff's state law claims are DISMISSED in their entirety without prejudice for lack of jurisdiction.

To the extent that Plaintiff's state law claims are based upon supplemental jurisdiction, the Court declines to exercise jurisdiction over the claims and they are DISMISSED without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court DISMISSES Plaintiff's Title VII claims in their entirety, against all parties, WITH PREJUDICE. The Court DISMISSES Plaintiff's state law claims in their entirety, against all parties, WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATE: January 6, 2010                   */s/ George J. Limbert*
                                        GEORGE J. LIMBERT
                                        U.S. MAGISTRATE JUDGE